411 So.2d 1212 (1982)
Gloria C. Cisneros, Wife of/and Marco CISNEROS
v.
Elizabeth C. Ferro, Wife of/and Gerald FERRO, et al.
No. 12699.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1982.
Writ Denied April 21, 1982.
*1213 Glenn C. McGovern, New Orleans, for plaintiffs-appellants.
E. Kelleher Simon, Murphy & Simon, C. Gordon Johnson, Jr., Porteous, Toledano, Hainkel & Johnson, New Orleans, Stephen L. Huber, Borrello & Huber, Metairie, W. Paul Andersson, Hammett, Leake & Hammett, New Orleans, for defendants-appellees.
Before BARRY, BYRNES and WARD, JJ.
BYRNES, Judge.
This suit arises out of a chain reaction collision involving five vehicles on a rain-soaked portion of the interstate highway. The speed limit is fifty-five (55) miles per hour, but due to the weather conditions and the medium to heavy traffic all the vehicles involved in the accident were traveling at approximately twenty (20) to twenty five (25) miles per hour. At the location of the collision, the westbound interstate is five (5) lanes wide. The extreme right two (2) lanes are entrance lanes merging from Tulane Avenue. The innermost of these two (2) lanes continue for approximately one (1) mile before becoming an exit onto Metairie Road. The outermost lane merges into the inner lane, approximately midway between the Tulane entrance and the Metairie Road exit. A vehicle driven by the plaintiff, Gloria Cisneros, in the first right hand lane either stopped or drastically reduced its speed. The following car driven by Ferro came to a stop behind Cisneros' car and was hit from behind by a car driven by Mrs. Bolling. This subsequent collision drove Ferro's car into the rear of the Cisneros' vehicle, causing the injuries complained of by Cisneros. Following the collision between Bolling and Ferro, Bolling's car was hit in the rear by a car driven by Donald T. Ranna, Jr., and in turn Ranna's car was rearended by a car driven by Mrs. Todt. Ferro testified that she was propelled into the Cisneros car by the impact and that the subsequent two impacts did not cause her to hit Cisneros again. This testimony is consistent with Cisneros' testimony whereby she stated that she was hit once and that she heard several subsequent impacts.
In a jury trial, the jury found that the defendants were not negligent and that the plaintiff was negligent and that her negligence was a proximate cause of the accident. Appellant appeals the judgment dismissing her suit and urges this court to render a judgment in her favor awarding appropriate damages.
The appellant maintains the trial court erred in not permitting certain jury charges to be read to the jury. Further, it is argued that the jury erred in finding Cisneros totally negligent and that her negligence was a proximate cause of the accident. Finally, the appellant argues that the trial court should have granted a motion for a new trial because the jury's decision was against the weight of the law and the evidence. The trial court refused to charge the jury with appellant's jury charges No.'s 1, 4, 5, 7, 14, 16, and 17.[1] The *1214 jury charges set forth by the judge were quite succinct and set forth in part:
"The law concerning liability for rear end collisions reads as follows:
`The court recognizes the rule that a following driver should drive at such a speed, and maintain such an interval, and keep a lookout, that he can avoid the collision with the leading car, under circumstances which should be reasonably anticipated by him.'
The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not in itself constitute negligence. In determining whether or not the driver was negligent in not maintaining a proper distance between his automobile and the one preceeding him, the speed at which he was traveling and his ability acting with ordinary care to stop his car is required to do so by a situation not produced by another's negligence should be considered. However, no driver is required to be on guard for unusual situations that may suddenly and unexpectedly arise.
Therefore in an exception to this general rule of law has been recognized, however, in instances where the driver of the lead vehicle negligently creates a hazard which the following vehicle cannot reasonably avoidlet me check the verbiage. Let me reread that because I left out a comma. It doesn't read right.
As a rule, when the following vehicle collides with the rear of a lead car, the following driver is considered to be at fault, however, no driver is required to be on guard for an unusual situation that may arise. Therefore an exception to this general rule of law has been recognized ...., in instances where the driver of the lead car negligently creates a hazard which the following vehicle cannot reasonably avoid."
We feel that this charge is in accordance with present day law pertaining to rear-end collisions and the attendant liability. In light of the charge given to the jury, the absence of the special charges requested by appellant in our opinion was not of such importance that had they been given, the jury would have reached a different verdict.
The apparent reason the jury rendered a verdict against the plaintiff appears to be that the weight of the law and the evidence was such that the jurors concluded that Mrs. Cisneros's negligence was a contributing factor to the accident. The testimony of Ferro indicates that Mrs. Cisneros came to a complete and abrupt stop in her lane and although Mrs. Cisneros testified that she had not completely stopped, the jury obviously chose to believe the testimony of Ferro. We find adequate evidence in the record to support the jury's determination and we thereby leave it intact pursuant to the guidelines enunciated in Canter v. Koehring Co., 283 So.2d 716 (La.1973). Further, the mere fact that the jury made a factual decision on the differing testimony suggests to this court that in the case at bar there does not exist "the hopeless conflict" in testimony as alluded to in plaintiff's jury charge No. 14, and as a result, the legal presumption of the defendant's responsibility cannot be said not to have been overcome.
In today's litigious society, to even the most casual observer, it is almost axiomatic *1215 that a rear-end collision will invariably result in a finding of liability on the part of the following driver absent showing a fairly substantial negligence on the part of the preceding driver.
Failure to maintain a specific distance between automobiles proceeding in the same direction does not constitute negligence per se. The facts of each case determine what is a safe or reasonable distance, but the following motorist is only liable for failing to avoid foreseeable dangers and emergencies. The driver of the following automobile is entitled to rely upon the assumption that the automobile ahead is being driven with care and caution in accordance with the laws of the road and that the driver thereof will not commit acts of negligence which will endanger the following traffic. Taylor v. Genuine Parts Co., 192 So.2d 241 (La.App. 4th Cir. 1966), Aetna Casualty & Surety Co. v. Henry, 307 So.2d 375 (La.App. 1st Cir. 1974), Morgan v. Whittington, 191 So.2d 911 (La.App. 1st Cir. 1966), Nomey v. Great American Indemnity Co., 121 So.2d 763 (La.App. 2nd Cir. 1960), Flowers v. The St. Paul Co., 336 So.2d 1018 (La.App. 2nd Cir. 1976).
In Am.Jur.2d, Volume 7 A, on page 1116, Section 849, states generally:
"The general rule that motorist on public highways or streets must exercise reasonable care in the operation of their vehicles, that is such care as a person of ordinary prudence would exercise under the same similar circumstances, governs the reciprocal rights and duties of motorist proceeding in the same direction ... Generally speaking, however, a motorist ahead owes no duty to a motorist to the rear except to use the road in the usual way, in keeping with the laws of the road, and until he has been made aware of it by a signal or otherwise he has a right to assume either that there is no motorist in the close proximity to the rear or that, being there, the motorist to the rear has his vehicle under such control so as not to interfere with the free use of the road in front of and to the side of him in any lawful manner. [Footnote omitted]
Further, Section 851 states: "The sudden stopping of a vehicle by a motorist, resulting in a collision between his vehicle and one behind constitutes negligence, particularly when such stopping is unsignaled." [Footnotes omitted]
Section 852 goes on to state: "In a number of cases it has been held that the operator of a vehicle which was struck from behind by another when the first came to a sudden stop because of traffic, could properly be found guilty of negligence in failing to properly signal his intention to stop the following motorist, .... In particular, the contention has been frequently raised, with considerable success, that the stopping motorist was confronted with an emergency justifying him in coming to an abrupt stop without signaling the following motorist, such as where an animal or person darted across the path of the motorist.... However, the claim that a sudden or unsignaled stop was justified by an emergency involving other vehicles on the road ahead ... has been rejected where it appeared that an emergency requiring the stop was created in part at least, by the preliminary negligence of the stopping motorist." [Footnotes omitted]
This circuit in Deiler v. Clayton, 378 So.2d 516 (La.App. 4th Cir. 1979), applied the principles enumerated in the case of Taylor v. Genuine Parts, Co., supra. In Deiler the following vehicle was suddenly faced with the sudden stop of the preceding vehicle. Brakelights were displayed and the driver of the following vehicle was not able to stop in time. Further, the following vehicle was unaware of any reason why the preceding vehicle would have to make a sudden stop until he was appraised of the hazard after the collision. From his vantage point there was for all practical purposes the same situation as faced by Ferro, namely, that there was no reason ascertainable by the following vehicle which would cause him to have noticed that the preceding vehicle might have cause to stop.
*1216 We discuss now the contention by plaintiff that the verdict was against the weight of the law and the evidence. Plaintiff was driving on the interstate highway. The lane she was driving in, although a merging lane, did not end but instead exited off the interstate. There was no reason for her to stop as there was testimony that there were no cars in front of her. This court does recognize that there would be a duty for a following motorist to be charged with the knowledge that in many instances, a person will improperly use a merging lane by driving to the point said lane stops, and then waiting for a break in oncoming traffic before again proceeding. In the present case, this knowledge cannot be charged since the lane did not end, but merely exited off the interstate. There was no reason based on these facts for plaintiff to stop or even slow down so drastically as to cause a collision and that the only inconvenience she would have suffered by not merging into traffic would be that she would be forced to exit to Metairie Road, cross the road, and continue back onto the interstate via what is essentially the same thoroughfare. The jury concluded, as do we, that Mrs. Cisneros' actions were of such a nature so as to reasonably preclude any other hypotheses than that her negligence was a proximate cause of the accident. For this reason we affirm the lower court's decision in not granting a new trial.
We therefore affirm the lower court's decision in full and assess all costs to appellant.
AFFIRMED.
NOTES
[1] "1. A motorist is held to have seen an automobile which by the use of ordinary care and prudence he should have seen in time to avoid colliding with it, and when a collision occurs, it is presumed that defendants were negligent in driving at a rate of speed greater than that permitting them to stop within their range of vision.

4. The driver of the leading automobile on a highway owes no duty to the driver of the following vehicle except to use the road in the usual way in keeping with the laws of the road.
5. Flashing of a lead car's brake lights is sufficient warning to following automobiles. The burden of proving the rear brake lights or other signal was not given is on the defendants and unless the defendants overcome this burden of proof, then you must find that the defendants were not exercising the proper care and attention and are liable to plaintiff.
7. A motorist is required to keep his automobile under control at all times. His duty to do so increases in periods of low visibility and adverse road conditions. When visibility is impaired a motorist should reduce his speed and keep his automobile under proper control.
14. If you find that the testimony is in a hopeless conflict, and that the defendant has in fact rear ended plaintiff's car, then the defendant, as a matter of law, has not exonerated himself from this legal presumption and is therefore responsible for the accident.
16. Generally, a motorist is held to have seen an automobile by which use of ordinary care and prudence he should have seen in time to avoid colliding with it, and he is guilty of negligence in driving at a rate of speed greater than that permitting him to stop within the range of his vision.
17. A motorist does not have the right to assume that his course of travel is free of obstruction and must at all times keep his vehicle under control that he can stop within his range of vision."