jjKLIEBERT, Chief Judge.
This case involves issues of liability for damages sustained in a rear-end collision. On May 30, 1991, a vehicle owned by the State of Louisiana, Department of Transportation and Development (DOTD) and operated by its employee, Stephen Mayfield, struck the rear of a vehicle operated by Milagros Urcia. The accident occurred on the West-bank Expressway in Gretna, Louisiana. Mrs. Urcia was killed in the accident.
Jesus Urcia filed suit on behalf of himself and his two minor children for damages against DOTD. DOTD filed a third party *417 demand against Leroy Jackson, the driver of a pick-up truck which was proceeding ahead of the DOTD vehicle at the time of the accident. Prior to the trial on the merits, DOTD’s third party demand against Jackson was severed from the trial.
After trial on the main demand, the trial court apportioned fault as follows: DOTD— 80%; Mrs. Urcia — 20%; and Jackson — 0%. The trial court awarded plaintiffs total damages of $1,242,113.52, which amount was reduced by 20% for Mrs. Ureia’s fault and rendered judgment against DOTD for $993,-690.82. From this judgment, DOTD appeals. For the reasons which follow, we affirm the trial court’s judgment.

FACTS

Milagros Urcia, the wife of Jesus Urcia and mother of two children, was travelling alone in her Toyota automobile in a 12westerly direction in the early afternoon of May 30, 1991 in the center lane of the West-bank Expressway in Gretna, Louisiana. The weather at the time of the accident was clear and sunny. At some point, the right rear tire of her vehicle sustained a blowout and she stopped her vehicle in the center lane of travel. Traffic conditions were heavy at the time and she turned on her hazard lights. After exiting her vehicle to inspect the flat tire, she re-entered her vehicle and remained in the vehicle until the impact of the accident.
Leroy Jackson was driving a pick-up truck in a westerly direction in the center lane of the expressway. Immediately behind the Jackson, vehicle in the center lane of travel was the vehicle driven by Stephen Mayfield, travelling in the same direction. Mayfield testified that he was travelling approximately forty-five or fifty miles per hour immediately behind the Jackson vehicle and that his vision was blocked by the Jackson vehicle and the items of furniture loaded into the back of the pick-up truck. He stated that the Jackson vehicle swerved to the right and at that point he first noticed the Urcia vehicle. He tried to swerve to the left of the Urcia vehicle in an effort to avoid the collision; however, his vehicle collided into the rear of the Urcia vehicle. He further testified that the items in the rear of the Jackson vehicle fell off into the roadway as the Jackson vehicle swerved to avoid the Urcia vehicle and that this distracted his attention. There was no evidence that Mayfield attempted to stop his vehicle prior to the impact.
On appeal, DOTD contends the trial court erred in (1) finding only 20% of the fault to Milagros Urcia; (2) assessing no percentage of fault against Leroy Jackson; and (3) assessing 80% of the fault to its employee, Stephen Mayfield.
“The standard of care imposed upon a following motorist is that it shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the preceding vehicle and the traffic upon and the condition of the highway. LSA-R.S. 32:81(A). Our courts have held that a presumption of negligence arises in a rear-end collision, but this presumption may be rebutted by showing that the following driver kept his vehicle under control, that he observed the forward vehicle and that he followed at a safe | ¡¡distance under the circumstances. Eubanks v. Brasseal, 310 So.2d 550 (La.1975); Cosse v. Bruley, 445 So.2d 41 (La.App. 4th Cir. 1984). The following driver is required to maintain a sufficient distance which will allow him to stop under normal circumstances. Cosse, supra. The following motorist will be held liable for not avoiding foreseeable dangers and emergencies whether or not created by the preceding driver’s negligence and will not be held to the duty of anticipating sudden or unexpected events. Deiler v. Clayton, 378 So.2d 516 (La.App. 4th Cir.1979).”
Collins v. Lemoine, 517 So.2d 994, 996 (La.App. 3rd Cir.) writ denied, 519 So.2d 106 (La.1987).
“The rule of sudden emergency cannot be invoked by one who has brought that emergency upon himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen. It does not apply to lower the standard of care required of motorists before the emergency occurs.”
*418 Evans v. Olinde, 609 So.2d 299, 302 (La.App. 3rd Cir.1992), writ denied, 616 So.2d 697 (La.1993).
“It is the unanticipated hazard which forms the foundation for sudden emergency.”
Fontenot v. Boehm, 512 So.2d 1192, 1194 (La.App. 1st Cir.1987).
It is well settled that when visibility is impaired.... a motorist must exercise care in the operation of his vehicle com- . mensúrate with the danger created by the conditions. He must reduce his speed and maintain a close lookout. As an extreme measure, when visibility is destroyed or greatly obscured, he must stop his vehicle until conditions permit him to resume travel in reasonable safety. Campbell v. American Home Assurance Co., 260 La. 1047, 258 So.2d 81 (La.1972). A motorist does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead. If he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. Lewis v. Quebedeaux, 134 So.2d 93 (La.App. 3rd Cir.1961).
Our review in this case is limited to examining whether the challenged findings of the trial court were manifestly erroneous. Ar-ceneaux v. Domingue, 365 So.2d 1330 (La.1978). Absent manifest error, this Court must not disturb the findings of the trial court which has evidence before it furnishing a reasonable factual basis for its findings, based on its reasonable evaluation of credibility. Rosell v. Esco, 549 So.2d 840 (La.1989).
Under the circumstances, Mayfield did not overcome the presumption of negligence. Aware of the traffic conditions and with his visibility obscured by the Jackson vehicle, Mayfield should have reduced his speed. In failing to take this Lprecautionary measure, he violated the standard of care required of him prior to encountering the Urcia vehicle. We find no error in the trial court’s assessment of liability.
DOTD argues that Mrs. Urcia violated LSA-R.S. 32:141(A) which provides:
Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
DOTD contends that Mrs. Urcia could have moved her vehicle to one of the emergency lanes located to the outside of the three travel lanes of the expressway. The record reveals that there were two unobstructed lanes of traffic on either side of the Urcia vehicle and that other vehicles passed the Urcia vehicle prior to the accident. There was testimony to the effect that a van stopped in the center lane behind the Urcia vehicle and later passed the Urcia vehicle. The record also shows that there was a clear view of the Urcia vehicle from a distance greater than 200 feet behind it, that the flashing lights on the Urcia vehicle had been activated, and that the Urcia vehicle was clearly visible in the clear, sunny day. Although there is no definite testimony as to the time lapse between the stopping of the Urcia vehicle and the impact, there is no evidence to support the DOTD’s argument that Mrs. Urcia had sufficient time to remove her vehicle given the prevailing traffic conditions.
DOTD also argues that Leroy Jackson operated his vehicle in violation of LSA-R.S. 32:381 and R.S. 32:383 which provide:
R.S. 32:381 — Height
A. The height of any vehicle shall not exceed thirteen feet, six inches.
B. Nothing in this Section shall be interpreted to require the state or any subdivision thereof or any person, firm, or corporation in this state to raise, alter, construct, or reconstruct any overpass, wire, pole, trestle, or other structure to provide such clearance.
*419 |rR.S. 32:383 — Loads on vehicles, care required thereto; definitions
A. The load on a vehicle shall not drop, sift, leak, or otherwise escape therefrom, except that sand may be dropped on a highway to secure traction or a liquid substance may be dropped on a highway to clean or maintain such highway.
B. (1) The load on any vehicle shall be securely fastened so as to prevent the covering or load from becoming loose, detached, or in any manner a hazard to other uses of the highway.
(2) Freight containers, as defined in 49 CFR 171.8, used in both the waterborne transport of cargo and in the overland transport of cargo shall be properly secured so as to prevent the container from becoming loose, detached, or in any manner a hazard to other users of the highway.
(3) Any violation of Paragraph (2) of this Subsection shall be punishable by a fine of not more than five hundred dollars or by imprisonment for not more than six months, or both.
(4)The penalty provisions of R.S. 32:383(B)(3) shall not apply when the freight container was properly secured and subsequently became loose or detached as the result of an accident or circumstances beyond the control of the operator of the vehicle.
C.“Loose material” means dirt, sand, gravel, or other material that is capable of blowing or spilling from a vehicle as a result of movement or exposure to air, wind currents, or weather, but shall not include agricultural products in their natural state or wood chips.
The trial court found that Jackson’s negligence, if any, did not proximately cause the accident. We find no error in this finding by the trial court.

DAMAGES

DOTD contends that the trial court’s awards for damages are excessive. The trial court awarded damages to' plaintiffs as follows:
Loss of love and affection:
Jesus Urcia — $250,000 x 80% $200,000.00
Patrick Urcia — $200,000 x 80% 160,000.00
Kathleen Urcia — $200,000 x 80% 160,000.00
Loss of economic support — $500,000 x 80% 400,000.00
Loss of Services — $80,000 x 80% 64,000.00
Funeral expenses — $8,963.53 x 80% 7,170.82
Property damages — $3,150 x 80% 2,520.00
Total $993,690.82 Plus interest and costs.
16Before an award of damages may be disturbed, a reviewing court must conclude that the trier of fact clearly abused its discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Jesus and Milogras Urcia had been married for eleven years prior to her death. They had two young children. The evidence establishes that Milogras Urcia was an everyday wife and mother. She was employed as a nurse and also performed many household duties. The uneontradicted evidence of a loving family and the evidence as to loss of economic support supports the trial court’s decision. We find no error of the discretion afforded to the trial court on the issue of damages.
We find no manifest error or abuse of discretion by the trial judge in this matter and we affirm his judgment in all respects. The costs of this appeal are taxed to the appellant.

AFFIRMED.